IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VELTEK ASSOCIATES, INC. and | : | |
| ARTHUR VELLUTATO, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| STERIS CORPORATION, | : | No. 07-3433 |
| Defendant. | : | |

## MEMORANDUM AND ORDER

**Schiller, J.**                                                                                                                                        **July 3, 2008**

Plaintiffs Veltek Associates, Inc. and Arthur Vellutato (collectively "Veltek") bring this action against Defendant Steris Corporation ("Steris") asserting infringement of United States Patent No. 6,607,695 (the "'695 patent"), which is directed to a method of sterilization allowing for an extended shelf life for sterilized chemical compositions. In response, Steris raises a counterclaim requesting declaratory judgment that the '695 patent is invalid, unenforceable, and not infringed by Steris's product. The parties have submitted briefs as to the claim terms requiring construction by this Court. Since neither side intended to call any witnesses, the parties agreed to forego a *Markman* hearing. (Joint Claim Construction Chart at 2 ¶ d.); *see SEZ AG v. Solid State Equip. Corp.*, Civ. A. No. 07-1969, 2008 WL 2550596, at *1 (E.D. Pa. June 26, 2008) (construing claims without *Markman* hearing). The Court must now construe the terms "aerosol" and "aerosol container" as used in claims 3 and 6 of the '695 patent.

### I.   BACKGROUND

The '695 patent claims a method of sterilizing a chemical composition, such as alcohol, by sealing that composition in multiple containers and subsequently exposing the containers to gamma

radiation. Dependent claim 3 claims this method where each container is an aerosol container. Claim 6 is a product claim for a shipping package comprised of several sealed aerosol containers, which is sterilized by radiation. The relevant claim language reads:

1. A method of sterilizing a chemical composition contained in a sealed container comprising the steps of . . . .

2. The method of claim 1 comprising a plurality of said second hermetically heat-sealed container enclosures in each of a plurality of said shipping cartons to form a plurality of closed shipping packages . . .

3. The method of claim 2 wherein each container is an *aerosol container* and including the step of pressurizing the internal volume of each *aerosol container* with an inert gas prior to sealing each container.

. . . .

6. A closed shipping package adapted to be terminally sterilized with radiation comprising a plurality of non-sterilize, sealed *aerosol containers* each having an internal volume and being charged with a quantity of a chemical composition and pressurized with an inert gas, a non-sterile first hermetically sealed container enclosure hermetically sealing each *aerosol container*, a non-sterile second hermetically sealed container enclosure, each non-sterile second hermetically sealed container enclosure containing a non-sterile, sealed *aerosol container* contained within a non-sterile first hermetically sealed container enclosure, and a shipping carton enclosing a plurality of the non-sterile second hermetically sealed container enclosures to form a non-sterile closed shipping package, the non-sterile closed shipping package externally radiated at a predetermined radiation level for a predetermined time interval to simultaneously sterilize the chemical compositions, the non-sterile, sealed *aerosol containers* and the non-sterile first and second hermetically sealed container enclosures.

(Pls.' Opening Claim Construction Br. [hereinafter "Pls.' Br."] Ex A ('695 Patent) col. 6-8 (emphasis added).) The '695 patent is a continuation of United States Patent 6,333,006, which, in turn, is a continuation of United States Patent No. 6,123,900 (the "'900 patent"). Like the '695 patent, the '900 patent claims methods of sterilization; the two patents share the same specification.

The parties dispute the meaning of the terms "aerosol" and "aerosol container" as used in

claims 3 and 6 of the '695 patent, and propose the following constructions:

| Term | Veltek's Proposed Construction | Steris's Proposed Construction |
|---|---|---|
| aerosol | a suspension of fine liquid particles in gas | a substance dispensed from a pressurized container as a suspension of fine liquid particles in gas |
| aerosol container | a pressurized container adapted to dispense a substance that forms an aerosol | a pressurized container for dispensing a substance as a suspension of fine liquid particles in gas |

The parties' primary disagreement is whether the definition of aerosol requires that liquid and gas both be dispensed from a pressurized container simultaneously, or whether a liquid dispensed from a container which then mixes with air also constitutes an aerosol. Steris argues that the definition of "aerosol" only applies where gas and liquid are simultaneously dispensed from a pressurized container, and that a liquid suspended in air would not constitute an aerosol where no gas was simultaneously dispensed from the container. (Def.'s Opening Br. on Claim Construction at 4-5; Def.'s Reply Br. on Claim Construction at [hereinafter "Def.'s Reply"] at 5.) Veltek argues that the term aerosol encompasses a liquid suspended in gas where that gas is the air surrounding the container. (Pls.' Br. at 13 (taking the position that "the aerosol (i.e., the suspension of liquid particles in gas) is *formed* as a result of the liquid being atomized as it passes through the spray nozzle into the atmosphere (air).").)

## II.  STANDARD OF REVIEW

Claim construction is a matter of law to be determined by the court. *Markman v. Westview Insts., Inc.*, 517 U.S. 370, 372 (1996). Words in a claim "are generally given their ordinary and

3

customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (internal quotations omitted). The actual language of a patent's claims is the starting point for a claim construction analysis. *Id.* at 1314. Claim language must also be interpreted in light of the patent's specification, which "'is the single best guide to the meaning of a disputed term.'" *Id.* (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Additionally, a court may look to external evidence such as dictionaries and treatises in construing claim language, however, any such evidence must be "considered in light of the intrinsic evidence." *Id.* at 1317-19. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of the commonly understood words." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (3d Cir. 2007) (*quoting Phillips*, 415 F.3d at 1314). "In such circumstances, general purpose dictionaries may be helpful." *Phillips*, 415 F.3d at 1314.

### III. DISCUSSION

Both parties point the Court to *Miller Prods. Co., Inc. v. Veltek Assocs., Inc.*, Civ. A. No. 01-35, 2004 U.S. Dist. LEXIS 1798 (D. Del. Feb. 10, 2004), in which Judge Jordan construed the term "aerosol" as it pertains to the claims of the '900 patent. In that case, Plaintiff Miller brought suit against Veltek and Vellutato, the plaintiffs in this case, seeking declaratory judgment of invalidity of the '900 patent and noninfringement of certain of its claims. The court explained that "nothing in the claims, specification, or the intrinsic record of the '900 patent indicates that the patentee

4

intended to deviate from the ordinary and accustomed meaning of aerosol," and that the term should therefore be construed in accordance with its common dictionary definition. *Id.* at *21. Consequently, the court construed the term "aerosol" to mean "a substance dispensed from a pressurized container as a suspension of fine liquid particles in gas." *Id.* In doing so, the court explicitly rejected Miller's contention that the term aerosol requires a commingling of the liquid and gas inside the aerosol container, since neither the claim language nor the specification referred to such a limitation.

Given the "importance of uniformity in the treatment of a given patent," *Markman*, 517 U.S. at 390, and the sound logic of the *Miller* decision, this Court adopts the *Miller* court's construction of aerosol as a substance dispensed from a pressurized container as a suspension of fine liquid particles in gas. Likewise, the Court embraces the *Miller* court's conclusion that a substance dispensed from a pressurized container constitutes an aerosol irrespective of whether that substance is commingled with gas within that container. It follows, then, that the definition of aerosol applies where a liquid is dispensed from a pressurized container as fine particles suspended in the surrounding air. Accordingly, this Court construes aerosol container to mean a pressurized container adapted to dispense a substance that forms an aerosol.

In adopting these constructions, the Court rejects Steris's argument that the "gas" component of an aerosol refers only to the pressurizing gas from within the aerosol container. Neither the language of the patent nor the dictionary definition of aerosol support such a construction. Although the '695 patent refers to the use of an inert gas *to pressurize* the aerosol container, nothing in the claim language requires the conclusion that the aerosol itself be comprised of a suspension of liquid in that inert gas. (*See* Pls.' Br. Ex. A col. 4, l. 12-18 ("When using isopropyl alcohol as the chemical

composition, such is generally inserted under pressure with an inert element such as nitrogen or another chemical formulation *acting as the propellant* into an aerosol can type chemical composition container") & col. 7, l. 24-27 (claiming a method of sterilization "including the step of *pressurizing the internal volume* of each aerosol container *with an inert gas* prior to sealing each container") (emphases added).) Furthermore, Steris's interpretation obfuscates the ordinary meaning of the term aerosol, which the dictionary defines as "a suspension of ultramicroscopic solid or liquid particles in air or gas (as smoke, fog, or mist)."[1] (Pls.' Br. Ex. M (Webster's Third New International Dictionary)); *see also Miller*, 2004 U.S. Dist. LEXIS 1798, at **19-20 (construing aerosol according to its dictionary definition). Consequently, the term aerosol encompasses a suspension of liquid in gas, whether that gas comes from within the pressurized container dispensing the aerosol, or whether that gas is the air into which the liquid is dispensed.

## IV. CONCLUSION

The disputed claim terms aerosol and aerosol container will be construed in accordance with this opinion. An appropriate Order follows.

---

[1] Steris's reading likewise contradicts it own usage of the term. In its reply brief, Steris acknowledged that "[w]hen the nozzle of a garden hose is set in the spray setting, . . . [it] create[s] an aerosol spray of sorts." (Def.'s Reply at 5.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VELTEK ASSOCIATES, INC. and ARTHUR VELLUTATO, Plaintiffs, | : : : : | CIVIL ACTION |
| v. | : : | |
| STERIS CORPORATION, Defendant. | : : | No. 07-3433 |

## ORDER

**AND NOW**, this **3rd** day of **July, 2008**, upon consideration of the parties' opening claim construction briefs, the responses thereto, and for the foregoing reasons, it is hereby **ORDERED** that the Court construes the disputed claim terms in United States Patent No. 6,607,695 as follows:

1. Disputed claim term "aerosol" means: a substance dispensed from a pressurized container as a suspension of fine liquid particles in gas.

2. Disputed claim term "aerosol container" means: a pressurized container adapted to dispense a substance that forms an aerosol.

BY THE COURT:

_____
**Berle M. Schiller, J.**